Filed 11/07/23

VERMONT SUPERIOR COURT
Washington Unit
65 State Street
Montpelier VT 05602
802-828-2091
www.vermontjudiciary.org



CIVIL DIVISION
Case No. 21-CV-03976

Human Rights Defense Center v. Centurion of Vermont LLC

## Opinion and Order On Cross-Motions For Summary Judgment

Defendant Centurion of Vermont LLC held the contract with the Vermont Department of Corrections (DOC) to provide medical, dental and mental health care to Vermont prisoners between 2015 and 2020. In 2021, Plaintiff Human Rights Defense Center (HRDC) requested, pursuant to Vermont's Public Records Act (PRA), that Centurion produce copies of certain records related to any legal claims against it that resulted in expenditures by it of $1,000 or more.

Specifically, HRDC sought records relating to "claims or lawsuits [from 2015 to present] brought against" Centurion or any of its employees or agents leading to payments of $1,000 or more by Centurion or its insurer, including "settlements, damages, attorney fee awards, and sanctions." The specific documents sought are those relating to such claims and that include:

- the names of the parties;
- the "case or claim number";
- the court in which the case or claim was brought;
- the date of resolution;
- the payments made and to whom;
- the complaint or claim form; and
- the "verdict form, final judgment, settlement agreement, consent decree, or other paper that resolved the case.[1]

---

[1] Literally, the request broadly seeks "[r]ecords sufficient to show" the bulleted list of information. The request also is not expressly limited to claims asserted by patient–prisoners. At argument, the Court invited HRDC to clarify the scope of its request in a

Centurion responded by denying that it is subject to the PRA and has produced no responsive records. This litigation ensued.

The parties have filed cross-motions for summary judgment addressing several legal issues: (1) whether Centurion is subject to the PRA; (2) whether the requested records are public records for purposes of the PRA; and (3) if Centurion and the records are subject to the PRA, whether the records are exempt from production under the exemption for documents that are confidential "by law," 1 V.S.A. § 317(c)(1), or the exemption for "personal documents," 1 V.S.A. § 317(c)(7).[2]

I.      Procedural Standard

Summary judgment procedure is "an integral part of the . . . Rules as a whole, which are designed 'to secure the just, speedy and inexpensive determination of every action.'" *Morrisseau v. Fayette*, 164 Vt. 358, 363 (1995) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986)). Summary judgment is appropriate if the evidence in the record, referred to in the statements required by Vt. R. Civ. P. 56(c)(1), shows that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law. Vt. R. Civ. P. 56(a); *Gallipo v. City of Rutland*, 163 Vt. 83, 86 (1994) (summary judgment will be granted if, after adequate time for discovery, a party fails to make a showing sufficient to establish an essential element of the case on which the party will bear the burden of proof at trial). The Court derives the undisputed facts from

---

post-hearing memorandum. That memorandum includes more argument but does not address the intended scope of the request.

[2] The motions focus on these broad legal issues rather than whether any particular record should be produced in whole or in part, though Centurion suggests that if the Court might order any records produced then it should first review them all *in camera.*

the parties' statements of fact and the supporting documents. *Boulton v. CLD Consulting Engineers, Inc.*, 2003 VT 72, ¶ 29, 175 Vt. 413, 427. A party opposing summary judgment may not simply rely on allegations in the pleadings to establish a genuine issue of material fact. Instead, it must come forward with deposition excerpts, affidavits, or other evidence to establish such a dispute. *Murray v. White*, 155 Vt. 621, 628 (1991). Speculation is insufficient. *Palmer v. Furlan*, 2019 VT 42, ¶ 10, 210 Vt. 375, 380. Where, as here, there are cross-motions for summary judgment, the parties opposing summary judgment "are entitled to the benefit of all reasonable doubts and inferences." *Montgomery v. Devoid*, 2006 VT 127, ¶ 9, 181 Vt. 154, 156.

As to the legal issues in the parties' motions, there is no dispute of fact.

II.     Whether Centurion is Subject to the PRA

The parties disagree as to whether Centurion is subject to the PRA at all. HRDC argues that the issue is controlled by *Hum. Rts. Def. Ctr. v. Correct Care Sols., LLC*, 2021 VT 63, 215 Vt. 362 (concluding that the contractor preceding Centurion was an "instrumentality" of the State and thus subject to the PRA). Centurion does not argue that it is distinct in some material way from Correct Care that would indicate that it should not be subject to the PRA as interpreted by the Supreme Court in *Correct Care*. Instead, it argues that *Correct Care* was poorly decided, that it did not consider the incongruities that would be created by applying the PRA to private entities, and that this Court should not follow it.

*Correct Care* controls this case. There, Wellpath (later known as Correct Care) had the contract with DOC to provide health services to Vermont prisoners for the 5-year term immediately preceding Centurion's contract to provide the same services. HRDC

submitted a request for public records to Wellpath under the PRA, and Wellpath maintained that it was a private business not subject to the PRA. That was the issue addressed by the Supreme Court. The Court's resolution of that issue is crystal clear: "we conclude that [Wellpath] was an 'instrumentality' of the DOC during the contract period. Therefore, it *was* a 'public agency' as that term is defined in the PRA." *Id.*, 2021 VT 63, ¶ 13, 215 Vt. at 369 (citations omitted). There is no apparent distinction between Centurion and Wellpath for purposes of this case, and Centurion does not claim one. Under *Correct Care*, Centurion is an instrumentality of the State in undertaking its contract with the DOC and is subject to the PRA on that basis.

Nor can the Court conclude that the High Court was oblivious to the difficulties of applying the PRA and some of its provisions to private companies. Wellpath made some of those same points. In rejecting them, the *Correct Care* Court recognized that "incongruencies or administrative difficulties may inhere as a result of the Act's application to instrumentalities like Wellpath." 2021 VT 63, ¶ 22, 215 Vt. at 373–74. It further noted that it is "for the Legislature to resolve such nuances." *Id.*

Centurion's argument that *Correct Care* was wrongly decided may be presented to the Supreme Court someday in hopes that it will reconsider that decision; but, this Court is typically bound by the force of such a recent decision of our Supreme Court. *See Eulitt ex rel. Eulitt v. Maine, Dept. of Educ.*, 386 F.3d 344, 349 (1st Cir. 2004) ("Until a [higher] court . . . revokes a binding precedent, a [lower] court . . . is hard put to ignore that precedent unless it has unmistakably been cast into disrepute by supervening authority."), *abrogation on other gds recognized by Carson as next friend of O. C. v. Makin*, 142 S.Ct. 1987 (2022).

### III.    Whether the Requested Records are "Public Records" Under the PRA

Even if subject to the PRA, Centurion argues that the requested records—all of them—are its own private business records rather than public records for purposes of the PRA. It maintains that the records were not acquired in the course of its contract with DOC and that they cannot be considered "public records." HRDC takes the opposite view and argues that the requested records were created in connection with and arose out of its provision of medical services for the DOC.

The *Correct Care* decision addresses whether a contractor in Centurion's circumstances, whose principal role is to exercise a fundamental governmental function, is a public agency under the PRA. It did not rule on whether the litigation records sought in that case were public records. Instead, it remanded for the trial court to determine whether the "requested documents were 'public records' within the meaning of the PRA or whether any statutory exemption applied thereto." *Hum. Rts. Def. Ctr. v. Correct Care Sols., LLC*, 2021 VT 63, ¶ 23, 215 Vt. 362, 374. Court records reflect that, on remand, Correct Care sought consent from the parties involved in the underlying litigation to produce any requested records that had been designated confidential by them, it eventually produced all records to HRDC's satisfaction, and any other issues were settled without Court involvement. The trial court never had to grapple with the extent to which responsive records, in fact, were "public records" subject to production. That question is presented now.

In advancing its position, Centurion relies primarily on an administrative decision of the Pennsylvania Office of Open Records (OOR), *In re Palattella v. Erie County*, No. AP 2022-0924, 2022 WL 2072872 (Pa. Off. Open Rec. June 6, 2022). In that case, the

requester sought records in the possession of healthcare providers contracted to deliver care to prisoners. The requested records were particular settlement agreements resulting from lawsuits filed by prisoners against the contractors, presumably arising out of care provided to the prisoners within the scope of the contractual arrangement.

Under Pennsylvania law, as described by the OOR, the issue boiled down to whether the records directly related to the contractors' performance under their contracts with the county. At that point in the decision, however, the analysis gets very thin. The OOR appears to have held that the records did not directly relate to performance under the contracts because the county had not been sued in the underlying cases, was not directly involved in them, and thus did not participate in the decision to terminate the litigation by compromise. The OOR does not further explain why a unilateral decision by a contractor to settle a lawsuit renders records from that litigation *not* directly related to performance under the contract when the lawsuit plainly arose out of the service the contractor was contracted to provide. The *Palattella* decision is not persuasive, at least as applied to Vermont's PRA.

Under the PRA, "public record" is broadly defined to mean "any written or recorded information, regardless of physical form or characteristics, which is produced or acquired in the course of public agency business." 1 V.S.A. § 317(b); *U.S. Right to Know v. Univ. of Vermont*, 2021 VT 33, ¶ 11, 214 Vt. 543, 548 ("The 'determinative factor' in the definition of 'public record' is whether the document at issue is produced or acquired in the course of [public] agency business." (internal quotation and citation omitted)). Centurion argues that all records requested in this case relate to litigation against it; its contract with the State does not control how it handles such litigation; the State actually

exercised no such control; and, thus, any records related to that litigation involved only its private business interests and those decisions are unrelated to Vermont agency business.

The Court notes that it, and presumably HRDC, does not currently know what responsive records Centurion possesses. The parties focus nearly all of their arguments on settlement agreements, particularly settlement agreements designated confidential by the settling parties. HRDC's written request, however, is substantially broader than that. *See supra* n.1. Moreover, in denying HRDC's request, it does not appear that Centurion produced an index of withheld records (none is in the record) as required by 1 V.S.A. § 318(b)(2), and it has not produced a *Vaughn* index of withheld materials in this case, *Vaughn v. Rosen*, 484 F.2d 820 (D.C. Cir. 1973); 33 Richard Murphy, *Fed. Prac. & Proc. Judicial Review* § 8476 (2d ed.) ("FOIA litigation raises the procedural challenge of finding a way for agencies to prove that documents should not be disclosed without disclosing them to the requester as part of the litigation process. In response to this problem, courts developed the *Vaughn* index.").

The *U.S. Right to Know* Court explained as follows:

> It is clear that by choosing the words "in the course of public agency business," the Legislature sought to shed light on government business, not the personal endeavors of state employees. Thus, an essential factor in determining whether a given record is a public record is whether its content reflects government—as opposed to personal—business. In that analysis, we look to the Legislature's description of public records for such considerations as whether the record contains information bearing on a government function, provides government officials with bases for making decisions, serves to ensure continuity with past government operations, or documents responsibilities of government actors. Other necessary factors to examine are the circumstances surrounding the record's creation, for example, by whom, for whom, and for what purpose the record was created; the role the record played in the functioning of the agency; and the record's location. Additional factors may become relevant in a given set of facts and

underlying the analysis is the Legislature's instruction to construe the PRA liberally in favor of disclosure.

*U.S. Right to Know v. Univ. of Vermont*, 2021 VT 33, ¶ 17, 214 Vt. 543, 550–51.

The current HRDC request is very broad.  It would appear to cover claims unrelated to the provision of services to DOC.  While counsel for HRDC indicated at oral argument that the intent of the request is more focused, the written request is expansive and would cover any litigation materials that were created during the time of Centurion's contract with DOC.[3]   Nonetheless, the Court concludes that the core of HRDC's request does seek "public records" under the PRA.  The governmental function largely delegated to Centurion by DOC was the provision of health care to Vermont prisoners.  If, for example, Centurion provided such care to a particular prisoner who later came to believe that the care was negligent and sued Centurion, the Court is hard-pressed to see how related records would not reflect on the very governmental business undertaken by Centurion.  The point is not that any such lawsuit necessarily had merit or that any decision to settle means there was merit, but by directly arising out of the governmental undertaking delegated to Centurion, such records plainly would reflect government, rather than purely private, business.

The Court declines to speculate as to whether any particular record is a public record subject to the PRA because no such particularized disputes are now before the

---

[3] At its most expansive reading, the request might encompass plainly non-public records. For example, a lawsuit relating to a tax dispute with the IRS or a personal injury claim filed by a third party related to a car accident involving one of Centurion's employees would likely be wholly collateral to the substance of "agency business" and would not generate any public records.

Court. Centurion's argument that none of the requested records are "public records" is rejected.

IV.    <u>Whether the Requested Records are Exempt Under 1 V.S.A. § 317(c)(1)</u>

Centurion next maintains that, even if it loses the first two arguments, the requested records are exempt from production under the PRA. It asserts that the requested records are exempt in total under 1 V.S.A. § 317(c)(1). That provision shields from access "[r]ecords that by law are designated confidential or by a similar term." The records Centurion focuses on are settlement agreements about which the parties agreed to maintain confidentiality, although HRDC's request is not expressly limited to settlement agreements. In any event, to the extent that Centurion is arguing that the underlying parties' confidentiality agreement satisfies the "by law" requirement of this provision, the Court disagrees.

Private parties are not a law unto themselves by dint of such agreements. "By law" plainly contemplates a statute, court order, and the like. *See, e.g., Norman v. Vermont Off. of Ct. Adm'r*, 2004 VT 13, ¶ 5, 176 Vt. 593, 594 (statutory basis asserted in support of exemption). If the "by-law" exemption could be triggered by a governmental entity's insertion of a confidentiality provision into the entity's contracts, it would greatly expand the scope of the exemption and allow a single governmental body, through its own actions, to declare certain documents off limits from public scrutiny. The Court does not believe the Legislature intended the by-law exemption to be used in such a fashion.

At least absent express legislative endorsement of the notion, the exemption for documents that are confidential "by law" does not apply in circumstances where a governmental entity has chosen or negotiated to include a secrecy provision in a contract

with a third party. The opposite conclusion would be in direct conflict with the goals of the PRA. *See, e.g., See Doyle v. City of Burlington Police Dep't,* 2019 VT 66, ¶ 11, 2011 Vt. 10, 15─16 (PRA reflects "Legislature's acknowledgment that open access to governmental records is a fundamental precept of our society and it is in the public interest to enable any person to review and criticize [the] decisions [of officers of government], who are trustees and servants of the people" (internal quotations omitted)).

V.    Whether the Requested Records are Exempt Under 1 V.S.A. § 317(c)(7)

Centurion lastly contends that the requested records are exempt in total under 1 V.S.A. § 317(c)(7). That provision shields from access information "relating to an individual, including information in any files maintained to hire, evaluate, promote, or discipline any employee of a public agency; information in any files relating to personal finances; medical or psychological facts concerning any individual or corporation." Again, Centurion focuses on settlement agreements to the exclusion of the broader set of records presumably within the scope of the request. It argues that because settlement agreements could contain personal information, particularly medical history, they should be exempt under this provision.

The Vermont Supreme Court has explained:

> Section 317(c)(7) exempts from public disclosure "personal documents relating to an individual, including information in any files maintained to hire, evaluate, promote or discipline any employee of a public agency, information in any files relating to personal finances, medical or psychological facts concerning any individual or corporation." We have construed the term "personal documents" to apply "only when the privacy of the individual is involved." More specifically, "the exception applies only to those documents that reveal intimate details of a person's life, including any information that might subject the person to embarrassment, harassment, disgrace, or loss of employment or friends."

In applying § 317(c)(7), the trial court must "balance the public interest in disclosure against the harm to the individual." In doing so, it

> must consider not only the relevance, if any, of the records to the public interest for which they are sought, but any other factors that may affect the balance, including: the significance of the public interest asserted; the nature, gravity, and potential consequences of the invasion of privacy occasioned by the disclosure; and the availability of alternative sources for the requested information.

*Rutland Herald v. City of Rutland*, 2013 VT 98, ¶¶ 5–6, 195 Vt. 85, 88 (citations omitted);

*see also Kade v. Smith*, 2006 VT 44, ¶ 14, 180 Vt. 554, 560 (requiring redactions where some material is exempt and some not in context of 1 V.S.A. § 317(c)(7)); 1 V.S.A. § 318(e) (describing the agency's general duty to redact and disclose where possible).

HRDC's request is broad and, presumably, extends to many publicly accessible filings in court cases. It is highly unlikely that all such records would contain the sort of personal information that is exempt under 1 V.S.A. § 317(c)(7). Whether *any* responsive records contain such information cannot be determined as a matter of law, particularly without knowing which such records Centurion possesses. This extends to settlement agreements. Whether such agreements contain exempt information will have to be determined on the facts of each record, the balancing noted above, and redactions may potentially conceal the name of the person or exempt material while allowing access to the remainder.

VI.     Propriety of *In Camera* Review at This Time

As an alternative to its various arguments that no responsive records need to be disclosed, Centurion asks the Court to examine all records *in camera* to determine whether they, or parts of them, are exempt or accessible. *See* 1 V.S.A. § 319(a) (providing for *in camera* review as necessary). *In camera* inspection of withheld documents is an

important way for the Court to determine whether responsive records have been withheld properly.  But, [*i*]*n camera* inspection is not a substitute for the government's burden of proof, and should not be resorted to lightly, due to the *ex parte* nature of the process and the potential burden placed on the court."  1 James T. O'Reilly, *Fed. Info. Discl.* § 8:31.  The *Vaughn* Index process was created to avoid, at least at the outset, the need for such one-sided Court examinations.  *Campaign For Responsible Transplantation v. U.S. Food & Drug Admin.*, 219 F. Supp. 2d 106, 111 (D.D.C. 2002).

The rudiments of a *Vaughn* Index have been described as follows:

> FOIA[4] litigation raises the procedural challenge of finding a way for agencies to prove that documents should not be disclosed without disclosing them to the requester as part of the litigation process.  In response to this problem, courts developed the *Vaughn* index.  A *Vaughn* index should satisfy the following "indispensable elements:"
>
> (1) The index should be contained in one document, complete in itself.
>
> (2) The index must adequately describe each withheld document or deletion from a released document.
>
> (3) The index must state the exemption claimed for each deletion or withheld document, and explain why the exemption is relevant.  Of course the explanation of the exemption claim and the descriptions of withheld material need not be so detailed as to reveal that which the agency wishes to conceal, but they must be sufficiently specific to permit a reasoned judgment as to whether the material is actually exempt under FOIA.

33 Richard Murphy, *Fed. Prac. & Proc. Judicial Review* § 8476 (2d ed.) (footnotes omitted).  Further:

---

[4] In construing the PRA, the Vermont Supreme Court has sometimes relied upon interpretations of the analogous federal Freedom of Information Act (FOIA).  *Toensing v. Attorney Gen.*, 2019 VT 30, ¶ 21, 210 Vt. 74, 87 ("[I]n construing the PRA, we have routinely considered—even if we ultimately declined in some cases to adopt—federal courts' interpretations of FOIA provisions.").

The index must "afford the FOIA requester a meaningful opportunity to contest, and the district court an adequate foundation to review, the soundness of the withholding."

Toward that end, the requester and the trial judge must "be able to derive from the [*Vaughn*] index a clear explanation of why each document or portion of a document withheld is putatively exempt from disclosure." While there is no set form for a *Vaughn* index, the agency should describe the documents with "as much information as possible without thwarting the exemption's purpose."

*Campaign For Responsible Transplantation v. U.S. Food & Drug Admin.*, 219 F. Supp. 2d 106, 111–12 (D.D.C. 2002) (citations omitted).

The Court declines to conduct an *in camera* review at this time. A *Vaughn* index in this case is needed so that the parties and the Court can proceed in a regimented and meaningful manner to determine which records, or parts of records, are subject to production and whether or to what extent *in camera* review is necessary.

VII.    Notification of Third Parties

The Court also notes that some of the requested records may implicate interests of third parties not before the Court. Centurion's argument—to the extent that it extends to confidential settlement agreements—presumes that the plaintiffs in the underlying cases relied on that confidentiality and would seek to preserve it. As HRDC points out, though, it may well have been Centurion who requested the term and the other party would not care if the information was disclosed. The Court cannot say one way or the other and, in fact, those third parties may have differing views as to enforcing the confidentiality provision. The same calculus would apply to the information Centurion asserts is "personal" under § 317(c)(7).

The Court has no knowledge of the scope of the documents at issue or the number of potential third parties involved. The Court's expectation is that appropriate

redactions and the *Vaughn* Index process will preserve the anonymity of third parties, at least at this juncture. To the extent HRDC believes the names of third parties are not exempt from disclosure and additional litigation is needed, the Court expects that Centurion will use its best efforts to alert the third parties of this litigation sufficiently in advance of any hearings to allow them to intervene on those issues.

## Conclusion

For the foregoing reasons, HRDC's motion for summary judgment is granted, in part, and denied, in part. Centurion's motion for summary judgment is denied, except as noted above.

(1) Within 15 days, the parties shall confer to clarify the scope of HRDC's records request, including whether HRDC seeks records unrelated to actions connected to Centurion's contract with DOC.

(2) Within 30 days thereafter, Centurion shall produce documents and redacted documents and prepare and file a *Vaughn* index detailing any withheld responsive records or parts of records.

(3) To the extent that any withheld records or parts of records are subject to confidentiality agreements entered into among the parties to an underlying lawsuit and/or seek allegedly private third-party information, the names of those persons shall not be disclosed. Centurion shall diligently seek to locate and notify those parties of this suit, and advise them that they may seek to intervene in this action if they wish to be

heard on the issue. Any such communications shall be documented in Centurion's *Vaughn* index.

Electronically signed on November 6, 2023, pursuant to V.R.E.F. 7(d).

Timothy B. Tomasi
Superior Court Judge