CAMPAIGN FOR RESPONSIBLE TRANSPLANTATION,
Plaintiff,

v.

UNITED STATES FOOD AND DRUG ADMINISTRATION et al.,
Defendants.

No. Civ.A.00–2849(RMU).

United States District Court,
District of Columbia.

July 23, 2001.

Jonathan Russell Lovvorn, Amy R. Atwood, Meyer & Glitzenstein, Washington, DC, for Plaintiff.

Brian J. Sonfield, U.S. Attorney's Office, Craig Alan Hoover, Hogan & Hartson, L.L.P., Bruce Neil Kuhlik, Jalena Garee Specht, Covington & Burling, Robert A. Dormer, Hyman, Phelps & McNamara, P.C., Jeffrey David Pariser, Hogan & Hartson, L.L.P., John Michael Engel, III, Foxkiser, Washington, DC, for Defendants.

**MEMORANDUM OPINION**

URBINA, District Judge.

**Denying the Plaintiff's Motion for a *Vaughn* Index; Granting the Defendants' Motion for a Sample *Vaughn* Index**

## I. INTRODUCTION

Xenotransplantation involves the implantation of animal tissues, cells and organs into human beings for the treatment of human diseases. Campaign for Responsible Transplantation ("CRT"), a non-profit organization dedicated to educating the public about the health risks associated with xenotransplantation, brings this action pursuant to the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552, to compel the United States Food and Drug Administration ("FDA") to disclose certain records concerning xenotransplantation.

This matter comes before the court on the plaintiff's motion for a *Vaughn* index of all FDA-generated records responsive to the plaintiff's FOIA request. The FDA has filed a cross-motion in which it argues that it should be required only to produce a sample *Vaughn* index of FDA-generated documents contained in one representative "investigational new drug" application ("IND"). Five of the intervenor-defendants—Circe Biomedical, Inc.; Nextran, Inc.; Diacrin, Inc. and Diacrin/Genzyme LLC.; Genzyme Corp.; and Novartis Pharmaceuticals Corp.—have filed statements of non-opposition to the plaintiff's motion for a *Vaughn* index.

For the reasons that follow, the court denies CRT's request for a *Vaughn* index of all withheld FDA-generated records and grants the FDA's motion to permit a sample *Vaughn* index of the records generated by the FDA for one representative IND.

## II. BACKGROUND

The FDA regulates xenotransplantation products as "investigational new drugs" ("IND") and "biological products" under section 351 of the Public Health Service Act, 42 U.S.C. § 262, the Federal Food, Drug and Cosmetic Act, 21 U.S.C. § 321 *et seq.*, and various FDA regulations, *see* 21 C.F.R. Parts 312, 601. The FDA is also responsible for reviewing applications by drug and biotechnology companies to conduct clinical trials involving xenotransplantation. *See* Compl. ¶ 6. According to the plaintiff, the FDA routinely grants approval for these trials "without any further federal oversight regarding health and ethical considerations—despite the Department of Health and Human Services' acknowledgment that 'concerns have arisen in the last few years about the potential infection, disease and public health risks associated with xenotransplantation.'" *Id.* (citing 64 Fed.Reg. 73562 (Dec. 30, 1999)). For example, the plaintiff alleges that "[m]edical procedures involving xenotransplantation—including, for example, the injection of fetal pig cells into human brains—threaten patients, their close contacts and the general public with 'zoonoses'—animal diseases that are transmitted to patients, and potentially, to the human population at large. These diseases include ... HIV/AIDS, Creutzfeldt–Jakob Disease ('mad cow' disease), rabies, and hepatitis B and C." Pl.'s Mot. at 2 (citation omitted).

On March 9, 2000, CRT submitted a written FOIA request to the FDA for all records concerning clinical trials that involved xenotransplantation. *See* Compl. ¶ 7. By letter dated March 14, 2000, the FDA acknowledged receipt of CRT's request and indicated that it would respond to the request "as soon as possible." *See id.* ¶ 9. When CRT did not receive a response by August 2, 2000, it appealed the constructive denial of its FOIA request to the FDA. *See id.* ¶ 10. After the FDA failed to respond to the appeal, CRT filed suit in this court on November 27, 2000 to compel immediate disclosure of the requested records. *See id.*

In its original FOIA request of March 9, 2000, CRT sought "all records concerning applications for approval to conduct clinic trials in humans that involve xenotransplantation, and all information concerning currently on-going [sic] and concluded clinical trials involving xenotransplantation." *See* Pl.'s Mot. at 4 (citation omitted). The requested records included information submitted to the FDA by third parties, including the intervenor-defendants. CRT has since narrowed its request to include only documents generated by or within the FDA. *See* Pl.'s Mot. at 6–7.[1] Because CRT does not know what these documents are, however, and in an effort to further narrow the scope of the litigation, CRT has moved for a *Vaughn* index of all such FDA-generated documents. *See id.* at 7. CRT states that "[o]nce defendant produces such an index, plaintiff may have a basis for deciding which, if any, such records it wishes to pursue." *Id.* The FDA has filed a cross-motion for a sample *Vaughn* index, in which it contends that to complete the plaintiff's requested *Vaughn* index, it would have to review about 240,000 pages of documents, a project that would take an estimated two years. *See* Def.'s Mot. at 2.

---

1. Now that CRT's request no longer includes documents generated by drug/biotechnology companies, the intervenor-defendants do not oppose the production of a sample *Vaughn* index of FDA-generated records. The intervenor-defendants remain involved in the lawsuit, however, to protect any FDA-generated records that may contain trade-secret or confidential business information.

## III. LEGAL FRAMEWORK: THE FREEDOM OF INFORMATION ACT

### A. Standard of Review

█ The Freedom of Information Act (FOIA) affords the public access to virtually any federal-government record that is not specifically exempted from disclosure by the Act itself. *See* 5 U.S.C. § 552; *Vaughn v. Rosen*, 484 F.2d 820, 823 (D.C.Cir.1973). FOIA confers jurisdiction on the federal district courts to order the release of improperly withheld or redacted information. *See* 5 U.S.C § 552(a)(4)(B). District courts review agency decisions to withhold information *de novo*, and the agency bears the burden of proving that the withheld information is exempt from disclosure. *See id.; see also United States Dep't of Justice v. Reporters Committee for Freedom of the Press*, 489 U.S. 749, 755, 109 S.Ct. 1468, 103 L.Ed.2d 774 (1989). In *Vaughn*, the D.C. Circuit set out procedures to assist both courts and plaintiffs in reviewing the validity of an agency's decision to withhold documents without conducting a painstaking inspection of hundreds or, as in this case, thousands of pages of documents. *See* 484 F.2d at 826–28.

### B. The Purpose and Design of the *Vaughn* Index

A *Vaughn* index is an affidavit that specifically describes the withheld or redacted documents and justifies, in detail, why each withheld record that would be responsive to the request is exempt from disclosure under FOIA. *See King v. United States Dep't of Justice*, 830 F.2d 210, 223–24 (D.C.Cir.1987). The purpose of a *Vaughn* index is twofold. First, in a FOIA case, the requester is usually unable to argue for the release of redacted or withheld documents with "desirable legal precision" because "the party seeking disclosure cannot know the precise contents of the documents sought." *See Vaughn*, 484 F.2d at 823. The requester must rely on the agency's representations for an understanding of the material withheld. *See Wiener v. FBI*, 943 F.2d 972, 977 (9th Cir.1991). "This lack of knowledge by the party seeking disclosure seriously distorts the traditional adversary nature of our legal system." *Vaughn*, 484 F.2d at 824. The *Vaughn* index, therefore, should provide the requester with "a meaningful opportunity" to argue for the release of withheld documents, thereby correcting the imbalance in the adversary process. *See King*, 830 F.2d at 218.

Second, unless the court inspects every disputed document *in camera*, the court also must rely on the agency for knowledge of the withheld material. Since the court's review of the agency's decision to withhold information is *de novo*, the *Vaughn* index helps "ensure meaningful review of an agency's claim to withhold information subject to a FOIA request." *See King*, 830 F.2d at 223. A proper *Vaughn* index should enable the court to make "a reasoned, independent assessment of the claim of exemption." *See Vaughn v. United States*, 936 F.2d 862, 866–67 (6th Cir.1991). In sum, a *Vaughn* index "functions to restore the adversary process to some extent, and to permit more effective judicial review of the agency's decision." *Wiener*, 943 F.2d at 977–78.

█ To satisfy these two closely related functions, the requester and the trial judge must "be able to derive from the index a clear explanation of why each document or portion of a document withheld is putatively exempt from disclosure." *Hinton v. Department of Justice*, 844 F.2d 126, 129 (3d Cir.1988). While there is no set formula for producing a *Vaughn* index, the agency should describe the documents

with "as much information as possible without thwarting the exemption's purpose." *See King,* 830 F.2d at 224. The real test of a *Vaughn* index is whether it provides "a relatively detailed justification, specifically identifying the reasons why a particular exemption is relevant and correlating those claims with the particular part of a withheld document to which they apply." *Mead Data Central, Inc. v. United States Dep't of Air Force,* 566 F.2d 242, 251 (D.C.Cir.1977). The index should also demonstrate that the agency has disclosed any reasonably segregable information from each withheld document. *See Vaughn v. Rosen,* 484 F.2d at 827. The agency must "specify in detail which portions of the document are disclosable and which are allegedly exempt." *See id.*

## IV. ANALYSIS

### A. Sample *Vaughn* Index

■ The principal issue before the court is whether the FDA should produce a comprehensive or a sample *Vaughn* index. CRT argues that the FDA should be required to index every withheld FDA-generated document responsive to its request, while the FDA argues that CRT's request is too broad and would create an "extraordinary burden and expense" for the FDA. *See* Def.'s Mot. at 2. The FDA currently oversees 35 investigational new drug applications ("INDs") involving xenotransplantation. *See id.* Each of the 35 INDs contains an average of 7,000 pages of documents. *See id.* According to the FDA, the plaintiff's request would require review of more than 240,000 pages of documents and would take more than two years to complete. *See id.* The FDA therefore asks that it be permitted to produce a sample index of records related to one IND because this sample would be highly representative of the documents contained in the other 34 INDs. *See id.* at 2. The

FDA predicts that it could complete such a sample index in 30 days. *See id.* at 10.

■ An agency may index only a sample of the responsive documents when "the number of documents is excessive and it would not realistically be possible to review each and every one." *Weisberg v. United States Dep't of Justice,* 745 F.2d 1476, 1490 (D.C.Cir.1984) (approving use of random sample constituting two percent of withheld material for *Vaughn* index). In *Bonner v. United States Dep't of State,* 928 F.2d 1148, 1149–51 (D.C.Cir.1991) (Bader Ginsburg, J.), this Circuit approved a sample of 63 of 1,776 disputed documents for a *Vaughn* index and held that representative sampling is "an appropriate procedure to test an agency's FOIA exemption claims when a large number of documents are involved." Similarly, in *Dowd v. Calabrese,* 101 F.R.D. 427, 437 (D.D.C.1984), this court held that the production of a *Vaughn* index for 15,000 pages of documents was unduly burdensome.

By limiting the *Vaughn* index to a sample of the documents in dispute, the parties can reduce a FOIA case "to a manageable number of items" for review. *See id.* Furthermore, "[i]f the sample is well-chosen, a court can, with some confidence, 'extrapolate its conclusions from the representative sample to the larger group of withheld material.'" *See id.* (quoting *Fensterwald v. CIA,* 443 F.Supp. 667, 669 (D.D.C.1977)). Accordingly, because the plaintiff's request for a comprehensive *Vaughn* index would be unduly burdensome to the agency, the court will allow the defendant to produce a sample *Vaughn* index.

### B. Representative Sampling

■ In its cross-motion, the FDA also asks that it be allowed to submit a *representative* sample *Vaughn* index. Representative sampling can be used to include

items that are "typical of broader classes of documents within the pool." *See In re United States Dep't of Defense*, 848 F.2d 232, 237 (D.C.Cir.1988). In this way, representative sampling "has the advantage of assuring that the documents in the sample do indeed typify the broader pool." *Id.* The D.C. Circuit held that it is within the trial judge's discretion to choose random or representative sampling, as the specific case may require. *See id.* at 237–38.

In support of its request for a representative sample index, the FDA states that it will index the FDA-generated documents relating to any one of the 35 IND files or, in the alternative, select one of the files at random to index. *See* Def.'s Mot. at 11. According to the FDA, "an index of the FDA-generated documents in one IND would be representative of the FDA-generated documents in all xenotransplantation IND's [sic] ... because the same types of FDA-generated documents are found in every xenotransplantation IND file." *Id.* (citations omitted). In addition, the FDA states that because it will assert the same exemptions for documents in the indexed IND as it would for the same types of documents in the other INDs, the plaintiff will be able to rely on the sample *Vaughn* index "with a high degree of confidence that it is representative of the greater universe of FDA-generated documents responsive to its request." *Id.* (citing *Bonner*, 928 F.2d at 1151).

CRT does not contest that the FDA would have to review over 240,000 pages of material to index all withheld documents. CRT does question, however, whether the documents contained in one IND are representative of the documents in the other 34 INDs. Accordingly, CRT asks that the court allow it to choose at least five INDs from which such a sample *Vaughn* index would be prepared. *See* Pl.'s Reply at 11. Of course, this would require the FDA to index about 35,000 pages of documents, which would still be unduly burdensome to the agency. *Cf. Dowd v. Calabrese*, 101 F.R.D. 427, 437 (D.D.C.1984) (holding that the preparation of an index of 15,000 pages of materials would be unduly burdensome).

At this stage of the litigation, the court will accord the FDA deference in its description of the documents in each IND as "essentially uniform." To further ensure the representativeness of the sample, however, the court will allow CRT to choose the IND to be indexed, with the exception of any Novartis IND.

### C. Exclusion of any Novartis IND

Although Novartis has no objection to the plaintiff's request for a *Vaughn* index, it asks that any records relating to any Novartis IND be excluded from the *Vaughn* index. *See* Novartis Pharms. Corp.'s Response to Pl.'s Mot. Requesting a *Vaughn* Index at 2. Novartis explains that until CRT filed this suit, the FDA had not regulated any Novartis INDs as xenotransplantation INDs. Thus, Novartis states that:

> until there is a resolution of the issue of whether FDA-generated records relating to or referring to any Novartis IND are within the scope of [CRT's] modified request, Novartis believes that all such records should be excluded from the requested *Vaughn* index or, at a minimum, that any such records included in the index be identified in such a way that they do not directly or indirectly identify the Novartis INDs or their subject.

*Id.* Neither the FDA nor CRT has responded to or opposed Novartis's request. Accordingly, the court will instruct the FDA to comply with Novartis's requested limitation.

## V. CONCLUSION

For the reasons stated above, the court will deny CRT's motion for a comprehensive *Vaughn* index. The court grants the FDA's cross-motion to permit a sample *Vaughn* index including all FDA-generated documents responsive to CRT's FOIA request contained in one representative IND, excluding any Novartis IND, to be chosen by CRT. An Order directing the parties in a manner consistent with this Memorandum Opinion is separately and contemporaneously executed this _____ day of July 2001.