# United States Court of Appeals
**FOR THE DISTRICT OF COLUMBIA CIRCUIT**

---

Argued October 12, 2007  Decided December 28, 2007

No. 06-5333

CAMPAIGN FOR RESPONSIBLE TRANSPLANTATION,
APPELLANT

v.

FOOD & DRUG ADMINISTRATION,
APPELLEE

---

Appeal from the United States District Court
for the District of Columbia
(No. 00cv02849)

---

*Howard M. Crystal* argued the cause for appellant. With him on the briefs was *Katherine A. Meyer*.

*Alan Burch*, Assistant U.S. Attorney, argued the cause for appellee. With him on the brief were *Jeffrey A. Taylor*, U.S. Attorney, and *R. Craig Lawrence*, Assistant U.S. Attorney.

Before: GRIFFITH, *Circuit Judge*, and EDWARDS and WILLIAMS, *Senior Circuit Judges*.

Opinion for the Court filed by *Senior Circuit Judge* EDWARDS.

EDWARDS, *Senior Circuit Judge*: Appellant, Campaign for Responsible Transplantation ("CRT"), is a not-for-profit organization dedicated to educating the public about the health

risks associated with xenotransplantation, a relatively new procedure whereby animal organs or tissues are transplanted to the human body. Since the late 1990s, the Food and Drug Administration ("FDA") has permitted clinical trials of xenotransplantation products. In order to learn more about these trials, CRT submitted a request to FDA under the Freedom of Information Act ("FOIA"), seeking records regarding applications to conduct clinical trials that involve xenotransplantation and past and present clinical trials involving xenotransplantation. CRT subsequently narrowed its FOIA request to include only records pertaining to xenotransplantation clinical trials in 35 investigational new drug ("IND") applications involving xenotransplantation. After CRT's FOIA request was constructively denied through agency nonresponse, CRT initiated suit in the District Court to compel the release of responsive documents.

During the course of litigation, CRT filed a motion to require FDA to produce an index of all documents under *Vaughn v. Rosen*, 484 F.2d 820 (D.C. Cir. 1973), and FDA filed a cross-motion to submit a sample *Vaughn* index of a representative IND. The trial court granted FDA's request and denied CRT's motion. *Campaign for Responsible Transplantation v. FDA*, 180 F. Supp. 2d 29 (D.D.C. 2001) (memorandum opinion) ("*CRT I*"). After FDA submitted two sample *Vaughn* indices, both parties moved for summary judgment on whether the sample *Vaughn* indices were sufficient to satisfy FDA's burden of proof that the withheld documents were exempt from disclosure. The trial court ruled against FDA, holding that the sample *Vaughn* indices were inadequate. *Campaign for Responsible Transplantation v. FDA*, 219 F. Supp. 2d 106 (D.D.C. 2002) (memorandum opinion) ("*CRT II*").

After FDA produced the revised *Vaughn* indices, the parties again moved for summary judgment. This time, the trial court found that the indices were adequate and that the exemptions

claimed by FDA were valid. In its memorandum opinion, the District Court also ordered FDA to release documents in all other requested INDs that were similar in kind to the documents that had been released for the sample INDs. *Campaign for Responsible Transplantation v. FDA*, Civ. Action No. 00-2849, mem. op. at 22 (D.D.C. Sept. 24, 2004), *reprinted in* Joint Appendix ("JA") 109 ("*CRT III*").

CRT moved for attorney's fees, pursuant to 5 U.S.C. § 552(a)(4)(E) under which a court may assess "reasonable attorney fees" when a "complainant has substantially prevailed." The District Court denied the request for fees on the ground that CRT had not substantially prevailed in its litigation. *Campaign for Responsible Transplantation v. FDA*, 448 F. Supp. 2d 146 (D.D.C. 2006) (memorandum opinion) ("*CRT IV*").

On this record, we reverse in part the judgment of the District Court and hold that CRT was a prevailing party by virtue of the September 24, 2004 memorandum opinion and order. A complainant substantially prevails in litigation only if the court grants some "judicial relief." *Buckhannon Bd. & Care Home, Inc. v. W. Va. Dep't of Health & Human Res.*, 532 U.S. 598, 606 (2001) (emphasis and quotation marks omitted). The trial court's final order in this case – requiring FDA to release documents – was sufficient judicial relief to make CRT a prevailing party. CRT is therefore eligible for attorney's fees. Before fees are awarded, however, a party must not only be eligible for attorney's fees – the party must also be entitled to those fees. *See Edmonds v. F.B.I.*, 417 F.3d 1319, 1327 (D.C. Cir. 2005). Because the trial court found CRT to be ineligible, it did not reach the question of whether CRT was entitled to attorney's fees. We therefore remand to the District Court for a determination of whether CRT is entitled to attorney's fees.

## I. BACKGROUND

On March 9, 2000, CRT submitted a written FOIA request to FDA for "all records concerning applications for approval to conduct clinical trials that involve xenotransplantation, and all information concerning currently on-going and concluded clinical trials involving xenotransplantation." Letter from Katherine A. Meyer, Attorney representing CRT, to Betty Dorsey, Director, FOIA Office, FDA (Mar. 9, 2000), JA 43. Xenotransplantation is defined as "any procedure that involves the transplantation, implantation, or infusion into a human recipient of either (a) live cells, tissues, or organs from a nonhuman animal source or (b) human body fluids, cells, tissues or organs that have had ex vivo contact with live nonhuman animal cells, tissues, or organs." UNITED STATES PUBLIC HEALTH SERVICE, OMB CONTROL NO. 0910-0456, GUIDELINE ON INFECTIOUS DISEASE ISSUES IN XENOTRANSPLANTATION 4 (2001); *see* 66 Fed. Reg. 8,120 (Jan. 29, 2001). It is not disputed that FDA has authority under several statutes to regulate xenotransplantation products as drugs or medical devices. *See, e.g.*, 21 U.S.C. §§ 321(g)(1), 355(a), (b); 42 U.S.C. § 262(a); 21 C.F.R. pts. 312, 601. At the time of the FOIA request, FDA had approved over 30 IND applications, authorizing pharmaceutical and biotechnology companies to conduct xenotransplantation clinical trials in humans.

FOIA is a disclosure statute "enacted to facilitate public access to Government documents." *Dep't of State v. Ray*, 502 U.S. 164, 173 (1991). A federal agency that receives a FOIA request must make a determination within 20 working days whether to release the requested documents. 5 U.S.C. § 552(a)(6)(A)(i). Although an agency may seek a brief extension of this deadline, *id.* § 552(a)(6)(B), it may only continue to withhold responsive records if they fall within one or more of the nine exemptions to the statute's disclosure mandate. *Id.* § 552(b)(1)-(9).

In a letter dated March 14, 2000, FDA acknowledged CRT's FOIA request and stated that it would respond to the request "as soon as possible." *CRT I*, 180 F. Supp. 2d at 31. When CRT did not receive a response by August 2, 2000, it appealed to the agency. *Id.* After FDA failed to respond to the appeal, CRT filed suit in the District Court on November 27, 2000. *Id.* Under 5 U.S.C. § 552(a)(4)(B), when responsive documents have been unjustifiably withheld, a district court has the power to "enjoin the agency from withholding agency records and to order the production of any agency records improperly withheld." The agency bears the burden of proving that withheld information is exempt from disclosure. *Dep't of Justice v. Reporters Comm. for Freedom of the Press*, 489 U.S. 749, 755 (1989).

Over the course of the litigation, CRT refined its FOIA request. Initially, CRT sought information submitted to FDA by third parties, but CRT eventually narrowed its request to include only FDA-created documents. *CRT I*, 180 F. Supp. 2d at 31. In an effort to identify all responsive documents held by FDA, and further narrow the scope of the litigation, CRT moved for a *Vaughn* index of all FDA-generated documents, stating, "once defendant produces such an index, plaintiff may have a basis for deciding which, if any, such records it wishes to pursue." *Id.* (quoting plaintiff's motion) (brackets omitted). A *Vaughn* index is created by an agency to assist courts and FOIA requesters when the agency claims that responsive documents are exempt from disclosure. The index is supposed to "describe with reasonable specificity the material withheld" and justify why each responsive document is exempt from disclosure under FOIA. *King v. Dep't of Justice*, 830 F.2d 210, 221 (D.C. Cir. 1987). When creating a *Vaughn* index, "[a] withholding agency must describe each document or portion thereof withheld, and for each withholding it must discuss the consequences of disclosing the sought-after information." *Id.* at 223-24 (emphasis omitted).

FDA balked at CRT's request for a comprehensive *Vaughn* index. The agency argued that it would take two years to compile the index sought by CRT and require review of nearly a quarter of a million pages of documents. *CRT I*, 180 F. Supp. 2d at 33 (citing defendant's motion). In response to CRT's motion, FDA filed a cross-motion for a sample *Vaughn* index whereby a representative IND would be selected, and FDA would compile a *Vaughn* index of the responsive documents for that IND.

The trial court ruled in favor of FDA, allowing the agency to produce a representative sample *Vaughn* index. The trial court "accord[ed] FDA deference in its description of the documents in each IND as essentially uniform." *Id.* at 34 (quotation marks omitted). FDA indicated that it planned to assert the same exemptions for the documents in the sample IND and the same types of documents in the other INDs. In other words, in FDA's view, the sample *Vaughn* index would provide CRT and the trial court with all necessary information for all of the INDs. *Id.* In order to "further ensure the representativeness of the sample, . . . the court [allowed] CRT to choose the IND to be indexed." *Id.* CRT chose IND G to be the subject of the sample *Vaughn* index.

In August 2001, FDA provided CRT with the sample *Vaughn* index for all records concerning IND G, and an additional *Vaughn* index for FDA records concerning xenotransplantation that were not related to any particular IND. Br. of Appellant at 12. At that time, FDA stated that it would release all nonexempt documents associated with IND G (which were not included in the sample *Vaughn* index because they were not exempt). *Id.* CRT challenged the adequacy of the sample *Vaughn* index, and complained that FDA still had refused to actually release responsive, nonexempt documents. On December 4, 2001, the District Court entered an order setting a briefing schedule and ordering FDA to release responsive,

nonexempt documents before December 17, 2001. *Id.* at 12-13. Subsequent to that order, FDA released hundreds of responsive documents to CRT. *Id.* at 13.

CRT and FDA moved for summary judgment on the question of whether FDA's search was reasonable, and also on the question of whether the sample *Vaughn* indices satisfied FDA's burden of showing that the withheld documents were in fact exempt from disclosure. On September 3, 2002, the District Court reviewed the steps that FDA had taken to search for responsive documents, and ruled that the agency's search was reasonable and therefore adequate. *CRT II*, 219 F. Supp. 2d at 110-11. The trial court then turned to the question of the adequacy of the *Vaughn* indices. The court found that they were flawed, because "[t]he description, reason for withholding, and cross-references do not provide enough information to give this court and the requester a clear indication of the justification for each exemption." *Id*. at 112. The District Court reasoned that the purpose of the *Vaughn* index was to give the requester sufficient information to challenge an agency's claim that a document was exempt, and give the court the ability to rule on the withheld documents without having to review voluminous information *in camera*. *Id.* at 111. The trial court found that "many of the descriptions" given by FDA "only provide[d] a vague hint at the possible contents of the documents." *Id.* at 112. The trial court also found that simply listing "terms from the general legal standard for the relevant FOIA exemptions" did not provide a "clear explanation" for why documents were being withheld. *Id.* at 114 (quotation marks omitted). Finally, the trial court held that FDA's cross-references to other documents violated the requirement that the index be "one complete document." *Id.* at 114-15. The trial court ordered FDA to file new *Vaughn* indices.

After this ruling, CRT agreed to further narrow its FOIA request to include only documents concerning clinical trials

involving pigs and nonhuman primates, leaving 19 INDs at issue. Br. for Appellee at 3. The agency then produced roughly a thousand additional records and parts of records, and substantially revised the *Vaughn* indices for those records that it continued to maintain were exempt from disclosure. Br. of Appellant at 15. The parties again filed cross-motions for summary judgment.

On September 24, 2004, the District Court issued an opinion holding that the revised indices were adequate and that the exemptions claimed by FDA were valid. *CRT III*, mem. op., JA 88. The court addressed two provisions of FOIA. First, under 5 U.S.C. § 552(b)(4), FOIA's disclosure requirements "[do] not apply to matters that are . . . trade secrets and commercial or financial information obtained from a person and privileged or confidential." The trial court, after reviewing the updated *Vaughn* index as well as supporting affidavits, held that for the five documents that the agency claimed the trade secrets exemption, "the FDA [had] fulfilled its burden of justifying non-disclosure" because the documents "contained confidential, commercial information and trade secrets which, if disclosed, would cause a substantial competitive injury." *Id.* at 9, JA 96. Second, under 5 U.S.C. § 552(b)(5), agencies need not release "inter-agency or intra-agency memorandums or letters which would not be available by law to a party other than an agency in litigation with the agency." The District Court agreed with FDA that 16 withheld documents were deliberative, and therefore excludable. *Id.* at 13, JA 100.

As part of its motion for summary judgment, CRT sought not only the withheld documents for the sample INDs, but also the "immediate disclosure of the other 18 INDs that [were] similar in kind to the representative sample IND G." *Id.* at 4, JA 91 (quotation marks omitted). In response to this request, the District Court ordered FDA to disclose all records that were

"similar in kind" to the records that it disclosed for IND G. *Id.* at 22, JA 109.

CRT then moved for an award of attorney's fees under 5 U.S.C. § 552(a)(4)(E). In order to be eligible for attorney's fees, a plaintiff must substantially prevail in its suit. CRT argued that the court order stating that FDA's original *Vaughn* indices were inadequate, the subsequent release of thousands of requested documents, and the September 24, 2004 order requiring the additional release of documents similar in kind to previously released documents were sufficient victories for CRT to be a prevailing party. The District Court disagreed and denied CRT's motion. *CRT IV*, 448 F. Supp. 2d at 153-54. This appeal followed.

## II. ANALYSIS

### A. *Standard of Review*

CRT argues that the District Court committed legal error in construing FOIA's prevailing party requirement. *Cf. Thomas v. Nat'l Sci. Found.*, 330 F.3d 486, 491 (D.C. Cir. 2003). We review *de novo* the District Court's denial of the award of attorney's fees, inasmuch as it "rests on an interpretation of the statutory terms that define eligibility for an award." *Davis v. Dep't of Justice*, 460 F.3d 92, 97 (D.C. Cir. 2006) (quotation marks omitted).

### B. *The Legal Framework for the Assessment of Attorney Fee Claims*

#### 1. *The* Buckhannon *Decision*

The law governing when a plaintiff is a "prevailing party" for purposes of fee-shifting statues is stated in *Buckhannon* and its progeny. *Buckhannon* interpreted the meaning of the term "prevailing party" in the Fair Housing Amendments Act of 1988 and the Americans with Disabilities Act of 1990. 532 U.S. at 600-01 (noting that the term appears in "[n]umerous federal

statues [that] allow courts to award attorney's fees and costs"). The Court rejected the "catalyst theory," pursuant to which a plaintiff might be found to be a "prevailing party" if the plaintiff achieves a "desired result because the lawsuit [brings] about a voluntary change in the defendant's conduct." *Id.* at 601-02.

*Buckhannon* thus "establish[ed] a framework for construing and applying the 'prevailing party' requirement." *Thomas*, 330 F.3d at 493. Under that framework, a "prevailing party is one who has been awarded some relief by the court." *Buckhannon*, 532 U.S. at 603 (quotation marks omitted). A claimant is successful in litigation when there has been a "court-ordered change in the legal relationship between the plaintiff and the defendant." *Id.* at 604 (quotation marks and brackets omitted). Something more than a mere "judicial pronouncement" is necessary – there must also be "judicial relief" on the merits of the plaintiff's claim. *Id.* at 606 (emphasis and quotation marks omitted).

2. Buckhannon *Applied to FOIA Cases*

In *Oil, Chemical & Atomic Workers International Union v. Department of Energy*, 288 F.3d 452 (D.C. Cir. 2002) ("*OCAW*"), we held that *Buckhannon* applied to FOIA cases: "eligibility for an award of attorney's fees in a FOIA case should be treated the same as eligibility determinations made under other fee-shifting statutes unless there is some good reason for doing otherwise." *OCAW*, 288 F.3d at 455. We found no good reason to treat FOIA differently than the statutes at issue in *Buckhannon*. *Id.* at 455-56. Therefore, "in order for plaintiffs in FOIA actions to become eligible for an award of attorney's fees, they must have been awarded some relief by a court." *Id.* at 456-57 (quotations marks and brackets omitted).

3. *The Voluntary Release of Documents Versus Court-Ordered Relief*

Under the *Buckhannon* standard, an agency's *voluntary release* of documents does not make a plaintiff a "prevailing party" in FOIA litigation, even if the FOIA lawsuit is a catalyst for the voluntary release. In *OCAW*, a union sought documents under FOIA from the United States Enrichment Corporation and the Department of Energy. *Id.* at 453. After the Energy Department began reviewing and releasing documents, *id.* at 457, the trial court approved a "Stipulation and Order" which stated: "In light of defendant's production of substantial amounts of material responsive to plaintiff's claim for relief in this action, the action is hereby dismissed with prejudice . . . ." *Id.* We determined that the agency's voluntary release of documents "did not constitute a decision on the merits." *Id.* Therefore, there was no judicial relief that would make the union a prevailing party. *Id.* at 459. Likewise, in *Davis*, the voluntary release of tapes by the Federal Bureau of Investigation ("FBI") did not make the plaintiff a prevailing party, even when the FBI released the tapes because they had been played at trial. 460 F.3d at 105-06.

In *OCAW*, however, we noted that if the "stipulation between the union and the Energy Department outlined documents the government still needed to disclose to the union, matters might be different." 288 F.3d at 458. We addressed exactly that question in *Davy v. C.I.A.*, 456 F.3d 162 (D.C. Cir. 2006). There, the plaintiff and the Central Intelligence Agency ("CIA") "reached a Joint Stipulation for the production of responsive documents. The district court approved the Joint Stipulation and memorialized it in a court order. . . . The order provide[d] that the 'CIA will provide Plaintiff all responsive documents, if any' . . . by certain dates." 456 F.3d at 164 (quoting order of the District Court). We held that this order "changed the legal relationship between the plaintiff and the

defendant." *Id.* at 165 (quotation marks and brackets omitted). We further held that "[t]he order . . . is functionally a settlement agreement enforced through a consent decree" and, therefore, clearly within the meaning of judicial relief under *Buckhannon*. *Id.* at 166.

### 4. *Orders Issued During the Course of Litigation*

In some cases, the court has been required to determine whether a plaintiff is a prevailing party in a FOIA action when the trial court issues an order in plaintiff's favor during the course of the litigation. Two principal rules guide the disposition of such cases. First, in assessing whether a plaintiff is a prevailing party, "it is of no import" whether an order comes "midway through the proceeding, rather than at its end." *Edmonds*, 417 F.3d at 1324. Second, a favorable order does not make a plaintiff a prevailing party unless the order constitutes judicial relief on the merits resulting in a "court-ordered change in the legal relationship between the plaintiff and the defendant." *Buckhannon*, 532 U.S. at 604 (brackets and quotation marks omitted).

In *OCAW*, the plaintiff was able to defeat a motion to dismiss for lack of jurisdiction. However, that victory was not judicial relief within the meaning of *Buckhannon*, because it merely allowed the plaintiff to move forward with the lawsuit; it did not "alter the legal relationship between [the] parties." *OCAW*, 288 F.3d at 458. Likewise, an order from the trial court to the Energy Department to "complete its record review" within a fixed timetable was not judicial relief. *Id.*; *see also Edmonds*, 417 F.3d at 1323 (discussing *OCAW*). Even though the defendant was required to act, the order did not provide any relief to the plaintiff – it simply forwarded the litigation process. In *Thomas*, a preliminary injunction barring defendant from spending money from a contested fund did not make plaintiff a prevailing party. 330 F.3d at 493-94. That preliminary injunction merely preserved the *status quo* and thus did not

change the legal relationship between the parties, as required by *Buckhannon*. *Id.* at 493. Even a finding by the District Court that the defendant's conduct was unconstitutional was held to be inadequate to make the plaintiff eligible for fees, because the finding did not constitute a judicial order affording discernible relief to the plaintiff. *Id.* at 493-94.

In *Edmonds*, however, we held that a partial summary judgment granting a plaintiff expedited review of a FOIA request, coupled with an order to the agency to release nonexempt documents by a date certain, was sufficient to render the plaintiff a prevailing party. 417 F.3d at 1322-23. The court noted that expedited review of a FOIA request is a "statutory right, not just a matter of court procedure." *Id.* at 1323. Therefore, the court concluded that the order requiring the agency to grant the plaintiff expedited review vindicated the rights of the plaintiff and afforded plaintiff discernible relief on the merits of the FOIA claim. This satisfied the *Buckhannon* standard and made the plaintiff eligible for fees.

**C.** ***Application of the Legal Principles to the Facts of the Case***

1. *CRT's Claims in This Case*

CRT argues that two decisions of the trial court were sufficient to support a finding that it was a prevailing party: first, the trial court's holding on September 3, 2002 that FDA's first *Vaughn* index was inadequate; second, the September 24, 2004 order requiring FDA to release documents similar in kind to documents it had released under the sample IND. Applying the above legal framework to these decisions, we find that the grant of summary judgment in favor of CRT with respect to the *Vaughn* indices was not judicial relief sufficient to make CRT a prevailing party. However, the September 24, 2004 order – requiring FDA to release documents sought by CRT – constituted court-ordered relief on the merits of CRT's claim

that changed the legal relationship between the parties. That order therefore made CRT a prevailing party eligible for attorney's fees under FOIA.

2. *The September 3, 2002 Partial Summary Judgment and Order*

After FDA prepared the initial *Vaughn* indices for the sample IND and the other responsive documents that were not related to any particular IND, both CRT and FDA moved for summary judgment. The District Court found that the agency had conducted a reasonable search, but also found that the *Vaughn* indices were inadequate. Therefore, on September 3, 2002, the District Court granted partial summary judgment in favor of CRT and ordered FDA to resubmit adequate *Vaughn* indices. *CRT II*, 219 F. Supp. 2d at 112-16. CRT argues that the grant of partial summary judgment and the subsequent court order were sufficient for it to be a prevailing party under FOIA. The District Court disagreed, stating:

> [B]efore September 3, 2002, the court had not ordered the FDA to turn over any documents; after September 3, 2002, the FDA still had no obligation to do so. Similarly, before September 3, 2002, the FDA was under judicial direction to produce an adequate *Vaughn* index; after September 3, 2002, the FDA was under judicial direction to produce an adequate *Vaughn* index. In short, the 2002 order preserved the *status quo* because it required the FDA to do something it was already required to do, namely, produce a suitable *Vaughn* index. Because the 2002 order preserved the *status quo*, it did not alter the legal relationship between the parties.

*CRT IV*, 448 F. Supp. 2d at 152 (citations omitted). The District Court arrived at the correct conclusion, albeit for an erroneous reason.

The District Court erred in suggesting that a court order is insufficient to support a claim for attorney's fees if it merely "require[s an agency] to do something it was already required to do." This is not the law and Government counsel acknowledged as much during oral argument before this court. Whenever a court grants relief of the sort contemplated by *Buckhannon*, it requires an agency to fulfil its existing legal obligations. There is no basis for such a court order without a preexisting legal obligation. Obviously, then, such an order constitutes a "court-ordered change in the legal relationship between the plaintiff and the defendant," *see Buckhannon,* 532 U.S. at 604 (brackets and quotation marks omitted), so as to make the plaintiff a prevailing party. Therefore, it is clear that a court order requiring a recalcitrant agency to release documents pursuant to the legal mandate of FOIA is sufficient to render the plaintiff a prevailing party.

In this case, however, a straightforward application of *OCAW* and *Edmonds* shows that the trial court's decision and order relating to the *Vaughn* indices did not make CRT a prevailing party. The trial court's order to FDA to redo its *Vaughn* indices is similar to the District Court's order to the Energy Department to "complete its record review" within a fixed timetable in *OCAW* and unlike the court's order to the FBI to expedite review of a FOIA request in *Edmonds*. In *OCAW*, the order was "procedural – conduct a search – as opposed to substantive." *Davy*, 456 F.3d at 165 (discussing *OCAW*). The search was not the relief on the merits that plaintiff sought; plaintiff sought the release of documents. In *Edmonds*, on the other hand, the defendant was required to "permit the plaintiff to 'jump to the head of the line' – a meaningful obligation in itself" – and also to "produce the [responsive, nonexempt] documents by the court-designated deadline." 417 F.3d at 1323. The court in *Edmonds* ordered the agency to do what the law required – something that it had theretofore been unwilling to do – and thus changed the legal relationship between the parties;

and the plaintiff prevailed on the merits of its claim by virtue of that court-ordered relief.

*Vaughn* indices are not properly understood as relief on the merits for a FOIA plaintiff. In *Vaughn*, this court faced a situation in which a federal agency had denied a FOIA request, and the trial court upheld that denial "on the basis of [a government] affidavit" that "did not illuminate or reveal the contents of the information sought, but rather set forth in conclusory terms the Director's opinion that the [documents] were not subject to disclosure under . . . FOIA." *Vaughn*, 484 F.2d at 823. Noting that "secret information is, by definition unknown," *id.*, we were troubled by the fact that only the party opposing disclosure had any knowledge about the documents sought. We also expressed concern over the "distort[ing]" effects of this information asymmetry on "the traditional adversary nature of our legal system's form of dispute resolution." *Id.* at 824. We therefore held that the District Court should "no longer accept conclusory and generalized allegations of exemptions" from Government agencies in FOIA cases, and created what came to be known as the *Vaughn* index requirement. *Id.* at 826-27.

The principal purpose of a *Vaughn* index is to facilitate the litigation process. A *Vaughn* index, without more, does not constitute court-ordered relief for a plaintiff on the merits of its FOIA claim, so it does not change the legal relationship between the plaintiff and the defendant. *See, e.g.*, *Davis*, 460 F.3d at 105-06. Therefore, an order compelling the production of a *Vaughn* index, without more, is not enough to make a plaintiff a "prevailing party" sufficient to support a claim for attorney's fees.

In this case, the trial court's decision that FDA's *Vaughn* indices were inadequate, and subsequent order requiring FDA to produce new indices, did not constitute judicial relief of the sort contemplated by *Buckhannon*. Therefore, CRT cannot

successfully claim to be a prevailing party based upon those decisions.

### 3. *The September 24, 2004 Order*

After FDA produced the second version of the *Vaughn* indices, both the agency and CRT again moved for summary judgment. This time, the trial court found that the indices were adequate and that the exemptions claimed by FDA were valid. *CRT III*, mem. op. at 6-22, JA 93-109. At the end of its memorandum opinion, however, the District Court granted specific relief to CRT on the merits of its FOIA claim:

> Finally, the court addresses the issue of the disclosure of similar records in the 18 other INDs. In its July 23, 2001 memorandum opinion, the court granted the defendants' motion to produce a sample *Vaughn* index from one IND instead of all of the INDs at issue. Despite some initial disagreement between the parties as to when the FDA had to release the other IND documents, it appears that the parties both understood that the disclosure was to occur after the court's ruling on the cross-motions for summary judgment. That time has arrived. Because IND G was supposed to be representative of all of the INDs, *the FDA must now disclose all FDA generated records that pertain to the other 18 INDs that are similar in kind to the IND G records that the FDA has already released.*

*Id.* at 22, JA 109 (citations omitted) (emphasis added). The court contemporaneously issued an order stating: "[I]t is ordered that the FDA shall disclose all FDA generated records that pertain to the other 18 INDs that are similar in kind to the IND G records that the FDA has already released." *Campaign for Responsible Transplantation v. FDA*, Civ. Action No. 00-2849 (D.D.C. Sept. 24, 2005) (order), JA 111.

Given this record, our decision in *Davy* controls the disposition here. In *Davy*, the parties created a Joint Stipulation

that was approved and memorialized in an order of the trial court. Even though the parties arrived at a mutually acceptable agreement, we held that the order memorializing the agreement created the necessary judicial *imprimatur* for plaintiffs to be a prevailing party. *A fortiori* the court order here does so as well. This is not a case in which FDA voluntarily released the documents covered by the trial court's September 24, 2004 order. The agency released the disputed documents only after the order was issued, and it released the documents pursuant to that order. It is irrelevant that the "defendant had agreed in its . . . summary judgment motion to release non-exempt, responsive documents related to all INDs after the court ruled on the dispositive motions." *CRT IV*, 448 F. Supp. 2d at 154. The agreement of the defendant to terms that are mandated by a court order is besides the point. Once an order has been adopted by the court, *requiring the agency to release documents*, the legal relationship between the parties changes.

The opinion in *OCAW* contains general language to the effect that, for a party to be eligible for attorney's fees, the court order in question must resolve a contested issue. However, the more critical fact in *OCAW*, as we have already noted, is that the order in question was strictly procedural (requiring that a record review be completed in 60 days) and did not afford judicial relief on the merits of the plaintiff's FOIA claim. In contrast, the order here, requiring the agency to produce records, resulted in a changed legal relationship between the parties, giving judicial relief to CRT on the merits of its claim. This is sufficient under *Buckhannon* and its progeny to support CRT's eligibility for attorney's fees under FOIA.

### III. CONCLUSION

For the foregoing reasons, the denial of appellant's request for attorney's fees under FOIA is reversed. As we stated in *Edmonds*: "Our case law makes clear that a FOIA plaintiff who substantially prevails becomes eligible for attorney's fees;

whether the plaintiff is actually entitled to a fee award is a separate inquiry that requires a court to consider a series of factors."   417 F.3d at 1327 (quotation marks, brackets, and emphasis omitted).   Because the District Court found CRT ineligible for attorney's fees, it did not inquire into whether it was entitled to those fees.  We therefore remand to the District Court to make a determination on that question.  *See Davy*, 456 F.3d at 166-67.

*So ordered.*